IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN M., a Minor, and SCOTT M. and | ) | |
| GEYSY M., Individually and as Parents and | ) | |
| Next Friend of RYAN M. | ) | |
| | ) | |
| | ) | Case No. 09 C 6728 |
| Plaintiffs, | ) | |
| | ) | Judge Virginia M. Kendall |
| v. | ) | |
| | ) | |
| BOARD OF EDUCATION OF THE | ) | |
| CITY OF CHICAGO, DISTRICT 299 | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ryan M., Scott M., and Geysy M. (collectively "Plaintiffs") filed suit against

Defendant Board of Education of the City of Chicago, District 299 ("the Board") pursuant to 20

U.S.C. § 1415(i)(3), seeking attorneys fees and costs incurred by Plaintiffs in prevailing in a due

process hearing against the Board.  Plaintiffs and the Board have filed cross-motions for summary

judgment.  Plaintiffs have also filed a Motion for Leave to Supplement the Record.  For the reasons

stated below, the Court grants Plaintiffs' Motion for Leave to Supplement the Record, grants in part

and denies in part the Board's Motion for Summary Judgment, grants in part and denies in part

Plaintiffs' Cross-Motion for Summary Judgment.

<u>**STATEMENT OF UNDISPUTED FACTS**</u>[1]

## I.     Background

At the time of his due process hearing, Ryan M. was a 4 year old boy with autism who attended a pre-Kindergarten class at Otis Elementary School ("Otis Elementary"), a Chicago Public School in School District 299.  (Pl. 56.1 Resp. ¶ 1; Def. 56.1 Resp. ¶ 1.)  Scott M. and Geysy M. are Ryan M.'s parents.  (Pl. 56.1 Resp. ¶ 2.)  The Board is a body politic and corporate organized to maintain Chicago Public School District 299; it is also the relevant Local Education Agency as defined in 20 U.S.C. § 1402(15).    (Pl. 56.1 Resp. ¶ 3; Def. 56.1 Resp. ¶ 3.)  The Board has periodically made decisions concerning this matter.  (Def. 56.1 Resp. ¶ 3.)

When Ryan M. was two years old, he was assessed by the Illinois Department of Human Services and found to have significant delays in communication, play sensory, and social-emotional

---

[1]     Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Plaintiffs' Statement of Uncontested Facts have been abbreviated to "Pl. 56.1 Exhibit __, p. __."; citations to the Board's Statement of Uncontested Facts have been abbreviated to "Def. 56.1 Exhibit __, p. __."; citations to the Board's Response to Plaintiffs' Statement of Uncontested Facts have been abbreviated to "Def. 56.1 Resp. ¶ __." ; citations to Plaintiffs' Response to the Board's Statement of Material Facts have been abbreviated to "Pl. 56.1 Resp. ¶ __.";

The Court notes that in many of their responses to the Board's statement of facts, Plaintiffs "admit and additionally affirmatively state" new facts addressing the same or a related topic.  The Court disregards additional facts set forth in the Plaintiffs' responses that are not properly set forth in their 56.1(b) Additional Statement of Facts.  *See* LR 56.1(b)(3)(C) (explaining that the opposing party's response must contain a *separate* statement "of any additional facts that require the denial of summary judgment").  In addition, paragraph 28 of Plaintiffs' 56.1 statements, which states that "Defendants have failed to pay for attorney fees reasonably due and owing to Plaintiffs in this case," contains a legal conclusion that is not appropriate in a statement of facts.  *See, e.g., GATX Logistics, Inc.*, 187 F.R.D. 561, 562 (N.D. Ill. 1999) (a party may not include legal opinions, legal arguments, or conclusions of law in its statement of facts in support of a motion for summary judgment); *see* L.R. 56.1(a) (a party moving for summary judgment shall file a "statement of material *facts*" entitling it to judgment as a matter of law) (emphasis added).  The reasonableness of attorneys fees to be awarded in this case, as well as what attorneys fees are due and owing, are issues of law that are central to this litigation.

Nonconformity with the Local Rules and the standing orders of the Court is not without consequence.  The Seventh Circuit has "repeatedly held that a district court is entitled to expect strict compliance with Rule 56.1." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (citing *Bordelon v. Chi. School Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000)).  "A district court does not abuse its discretion, when, in imposing a penalty for a litigant's non-compliance with Local Rule 56.1, the court chooses to ignore and not consider the additional facts that a litigant has proposed."  *Cichon v. Exelon Generation Co., L.L.C.*, 401 F.3d 803, 809-10 (7th Cir. 2005).  Accordingly, this Court will not consider portions of Plaintiff's submissions that are not properly set forth in a Statement of Additional Material Facts or constitute legal conclusions.

skills. (Def. 56.1 Resp. ¶ 7.) In May 2007, the Family Clinic at the University of Illinois ("the UIC Family Clinic") evaluated Ryan M. and diagnosed him with autism, finding him to be severely limited in communication, behavior, and activities of daily living. (Def. 56.1 Resp. ¶ 8.) The UIC Family Clinic recommended that Ryan M. receive a year-round educational program that included at least 25 hours per week of classes. (Def. 56.1 Resp. ¶ 9.) In November and December 2007, when Ryan M.'s parents attempted to enroll him in a Chicago Public School Early Childhood Program, Chicago Public Schools conducted a psychological evaluation, speech assessment, occupational therapy evaluation, social assessment, and nursing assessment. (Pl. 56.1 Resp. ¶ 5; Def. 56.1 Resp. ¶ 10.) Chicago Public Schools found Ryan M. eligible for special education and related services as a child with autism. (Pl. 56.1 Resp. ¶ 6; Def. 56.1 Resp. ¶ 10.)

Ryan M.'s parents then met with school officials to develop an Individualized Education Program ("IEP"). (Pl. 56.1 Resp. ¶ 6.) In December, Ryan M.'s IEP team determined that he should be placed in a half-day self-contained classroom for autistic students at Otis Elementary for 2.5 hours each day until the end of the school year. (Pl. 56.1 Resp. ¶ 7.) This IEP did not include a behavior intervention plan. (Def. 56.1 Resp. ¶ 10.) Ryan M. attended this program for 2.5 hours per day between January and June 2008. (Def. 56.1 Resp. ¶ 11.) During the summer of 2008, Ryan M. was admitted to an extended school year program for four weeks. (Pl. 56.1 Resp. ¶ 8.)

## II.    Due Process Hearing

Scott and Geysy M. filed a request for a due process hearing on June 9, 2008, alleging that Ryan M. was not receiving a Free and Appropriate Public Education ("FAPE") at Otis Elementary because he was not being afforded the UIC Family Clinic's recommendation of 25 hours per week of intensive therapeutic and educational services in a year round program. (Pl. 56.1 Resp. ¶ 9; Def.

56.1 Resp. ¶ 12.)  They also claimed that Ryan M.'s IEP goals were vague, included inaccurate statements about his present performance, and did not include all areas of need.  (Pl. 56.1 Resp. ¶ 9; Def. 56.1 Resp. ¶ 12.)  Finally, they argued that he should be given a one-on-one aid in his general program.  (Pl. 56.1 Resp. ¶ 9; Def. 56.1 Resp. ¶ 12.)  The parties unsuccessfully attempted mediation in July 2008.  (Pl. 56.1 Resp. ¶ 10; Def. 56.1 Resp. ¶ 13.)

In September 2008, Scott and Geysy M. hired psychologist Dr. Robert E. Daniels ("Dr. Daniels") to evaluate Ryan M.  (Pl. 56.1 Resp. ¶ 11; Def. 56.1 Resp. ¶ 14.)  After observing Ryan M. in the classroom, Dr. Daniels determined that the Otis Elementary program did not meet his needs.  (Pl. 56.1 Resp. ¶ 11; Def. 56.1 Resp. ¶ 14.)  On November 21, 2008, the parties participated in an IEP meeting to discuss Dr. Daniels' report.  (Pl. 56.1 Resp. ¶ 12; Def. 56.1 Resp. ¶ 15.)  They met again on December 12, 2008 to review a report from Mara Lane ("Lane"), a speech and language pathologist who also evaluated Ryan M.  (Pl. 56.1 Resp. ¶ 13; Def. 56.1 Resp. ¶ 15.)  On January 7, 2009, the parties convened a third meeting to develop an IEP for Ryan M. for the following year.  (Pl. 56.1 Resp. ¶ 14.)  This IEP still placed Ryan M. at Otis Elementary but expanded his educational program to five hours of instruction per day with additional time allotted for all services.  (Pl. 56.1 Resp. ¶ 15; Def. Resp. ¶ 15.)  Following the implementation of this program, Scott and Geysy M. complained that the January 2009 IEP did not adequately address Ryan M.'s needs and that continuing to place him at Otis Elementary was inappropriate.  (Pl. 56.1 Resp. ¶ 16.)  The parties then held a third IEP meeting making further adjustments to the services offered to Ryan M.  (Def. 56.1 Resp. ¶ 16.)

On January 23, 2009, a due process hearing commenced.  (Pl. 56.1 Resp. ¶ 17; Def. 56.1 Resp. ¶¶ 1, 17.)  The hearing lasted four to five total days over the course of January, February, and

March 2009.  (Pl. 56.1 Resp. ¶ 17; Def. 56.1 Resp. ¶¶ 1, 17.)  Scott and Geysy M. requested the

following remedy at the hearing: 1) a determination that the District failed to provide Ryan M. with

a FAPE; 2) a determination that Ryan M. is entitled to compensatory services; 3) a decision that

Ryan M. be provided with a FAPE and placed in a private facility if appropriate; 4) a decision that

Ryan M. be provided with individual, one-on-one speech/language occupational therapy and direct

social work services; and 5) that the new IEP goals reflect Ryan M.'s present level of performance.

(Pl. 56.1 Resp. ¶ 18.)

Following the hearing, the parties submitted post-hearing memoranda.  (Def. 56.1 Resp. ¶

17.)  On May 23, 2009, the hearing officer entered a written Decision and Order concluding:

> a) The position of the Parents is upheld. R.M. did not have IEPs that provided him
> with education benefits and FAPE.
> b) R.M. is to be placed in an ISBE-approved private day therapeutic school serving
> young children with autism in a full day, year round educational program with
> intensive educational and therapeutic services that address his core deficits in the
> areas of behavior, communication, functional independence and childhood
> development.
> c) The parties are directed to develop an IEP within thirty days of the date of this
> Decision that implements Order No. 2, develops a Functional Behavior
> Analysis/Behavior Implementation Plan, and requires charting of progress in meeting
> goals and benchmarks.
> d) R.M. is to receive one year of compensatory education in the placement and
> program to be determined in Order No. 2 to compensate him for the District's failure
> to provide FAPE under his two previous IEPs.
> e) The District shall submit proof of compliance with these orders to the Illinois State
> Board of Education, Program Compliance Division, 100 North First Street,
> Springfield, Illinois, 62777 within 35 days from the receipt of this Decision.

(Pl. 56.1 Resp. ¶ 19; Def. 56.1 Resp. ¶ 21.)  The hearing officer also found that "the District's

arguments in support of its position in this case are not persuasive . . . . The evidence shows that

[Ryan M.'s classroom] has not allowed [him] to achieve educational benefits."  (Def. 56.1 Resp. ¶

19.)  The hearing officer explained that "the evidence shows R.M has made little, if any, progress

in this classroom. In addition, CPS contends questions of educational methodology are best left to the schools to determine. However, this case does not focus on the adequacy of a methodology. This case is concerned with evaluating the appropriateness of IEPs and deciding whether they enable R.M. to obtain educational benefits." (Def. 56.1 Resp. ¶ 20.) Plaintiffs' counsel later filed a complaint with the Illinois State Board of Education regarding non-compliance with the hearing officer's determination. (Def. 56.1 Resp. ¶ 22.)

### III. Attorney's Fees

Following the hearing officer's Decision and Order, Plaintiffs, through their counsel, filed a petition for attorneys fees on July 21, 2009 in the amount of $101,251.77. (Pl. 56.1 Resp. ¶ 20; Def. 56.1 ¶ 23.) Plaintiffs' July 21, 2009 letter included an itemized list of the attorney's fees and costs allegedly incurred during the due process hearing. (Pl. 56.1 Resp. ¶ 21.) In this bill of costs, Plaintiffs' attorneys Deborah Pergament ("Pergament") and Mary Mulae ("Mulae") billed at a rate of $300.00 per hour and their paralegals billed at a rate of $75.00 per hour. (Pl. 56.1 Resp. ¶ 22.)

### A. Drafting Documents

Plaintiffs' counsel billed 3.0 hours on April 21, 2008, 5.0 hours on May 3, 2008, and 3.0 hours on May 15, 2008 drafting the Due Process Complaint, for a total of 14.0 hours. (Pl. 56.1 Resp. ¶ 25.) Plaintiffs' counsel billed 6.5 hours on June 23, 2008 to prepare a response to the District's Notice of Insufficiency, and 2.3 hours on November 29, 2008 and December 1, 2008 to prepare a motion to set hearing dates. (Pl. 56.1 Resp. ¶ 26-27.) On December 11, 2008, Plaintiffs' counsel billed .5 hours to email their clients and experts about the IEP meeting that occurred on that day. (Pl. 56.1 Resp. ¶ 28.) On January 3, 2009, Plaintiffs' counsel billed 3.0 hours to draft stipulations

of fact, and billed 3.0 hours on January 4, 2009 to draft a dissent to Ryan M.'s IEP. (Pl. 56.1 Resp. ¶ 29-30.)

Plaintiffs' counsel billed 5.0 hours on January 17, 2009 to prepare a motion for reconsideration of the hearing officer's denial of Mara Lane's classroom observation, 4.0 hours on January 27, 2009 to prepare a reply brief, and 1.0 hours on January 27, 2009 to review the District's pleadings and supporting case law. (Pl. 56.1 Resp. ¶ 23.) On January 20, 2009, Plaintiffs' counsel billed 4.0 hours on January 20, 2009 to write an opening statement. (Pl. 56.1 Resp. ¶ 36.) On March 15, 2009, Plaintiffs' attorney billed .5 hours to draft a two page letter requesting transcripts to the Board's attorney. (Pl. 56.1 Resp. ¶ 31.)

In preparing Plaintiffs' post-hearing brief, Plaintiffs' counsel billed a total of 66.4 hours, divided as follows: 3 hours on April 7, 2009, 2.0 hours on April 22, 2009, 6.0 hours on April 23, 2009; 3.5 hours on April 26, 2009; 5.0 hours on May 1, 2009; 4.0 hours on May 2, 2009; 5.5 hours on May 3, 2009; 11.4 hours on May 4, 2009; 17.0 hours on May 5, 2009; and 9.0 hours on May 6, 2009. (Pl. 56.1 Resp. ¶ 37.)

## B.    Preparing Hearing Documents

On August 14, 2008 and August 15, 2008, Plaintiffs' counsel billed 1.5 hours to prepare disclosure documents listing witnesses and exhibits for the hearing officer. (Pl. 56.1 Resp. ¶ 34.) Plaintiffs' counsel billed 2.0 hours on August 20, 2008 to prepare hearing documents. (Pl. 56.1 Resp. ¶ 32.) Plaintiffs' counsel's law clerk billed 4.5 hours on September 19, 2008 to prepare material for the administrative hearing and billed 7.0 hours on September 20, 2008 to prepare pre-trial materials and documents. (Pl. 56.1 Resp. ¶ 33.) Finally, Plaintiffs' counsel billed 4.0 hours on January 15, 2009 to prepare trial books and 4.5 hours on January 16, 2009 to finalize the trial

exhibit book.  (Pl. 56.1 Resp. ¶ 32.)  The hearing binder contained 509 pages of documents.  (Pl. 56.1 Resp. ¶ 35.)

## C.     Preparing Witness and Direct Examinations

On December 30, 2008, Plaintiffs' counsel billed 3.0 hours to prepare direct examinations for special education case manager Dionne Cunningham ("Cunningham"), special education case manager Kathleen Roger ("Roger"), and Chicago Public Schools Autism Department Head Mo Buti ("Buti").  (Pl. 56.1 Resp. ¶ 42.)  Plaintiffs' counsel also billed 3.0 hours on January 19, 2009 to prepare for Cunningham's direct examination, 3.0 hours on January 20, 2009 to prepare for Roger's direct examination, 3.0 hours on January 20, 2009 to prepare for Buti's direct examination, and 4.0 hours on January 18, 2009 to prepare for the direct examination of classroom teacher Dee Herbert ("Herbert").  (Pl. 56.1 Resp. ¶ 42.)  Plaintiffs' counsel later agreed to reduce the amount billed for preparation for Roger's direct to 1.0 hours.  (Pl. 56.1 Resp. ¶ 43.)   On January 14, 2009, Plaintiffs' counsel billed 5.0 hours to prepare Dr. Daniels to testify at hearing and billed 3.0 hours on January 22, 2009 to write his direct examination.  (Pl. 56.1 Resp. ¶ 38.)

Plaintiffs' counsel billed 4.0 hours on February 5, 2009 preparing Lane to testify at hearing and 3.0 hours on February 22, 2009 to prepare her direct examination.  (Pl. 56.1 Resp. ¶ 39.)  Because each of Plaintiffs' attorneys prepared Lane for direct examination, there are duplicate entries for this preparation.  (Pl. 56.1 Resp. ¶ 39.)  On February 8, 2009, Plaintiffs' counsel spent 3.0 hours to prepare Dr. Ann Culter's direct examination and 4.0 hours on February 9, 2009 to prepare her to testify at the hearing.  (Pl. 56.1 Resp. ¶ 40.)  Finally, with respect to Geysy M. and Scott M.'s testimony, Plaintiffs' counsel billed: 3.0 hours on January 14, 2009 to write their direct examination; 3.0 hours on January 22, 2009, 6.0 hours on February 18, 2009, and 4.0 additional hours to prepare them to testify; and 3.0 hours on March 23, 2009 to prepare Geysy M. for cross-examination.  (Pl. 56.1 Resp. ¶ 41.)

### D. Non-Legal Research

In the category of non-legal research, Plaintiffs' counsel billed 3.0 hours on January 24, 2009 to perform "[r]esearch on CPS claims concerning availability of full-day preschool programs." (Pl. 56.1 Resp. ¶ 44.) Plaintiffs' counsel "[r]ead listing in CPS 2009-2010 Elementary and Preschool Directory to identify and [sic] all full-day preschool programs for students with autism," which "required tabulating CPS elementary and Pre-K directory and reviewing entries for over 100 schools." (Pl. 56.1 Resp. ¶ 44.)

### E. Travel Time

Plaintiffs' counsel billed the following travel times: a) 2.0 hours on January 14, 2009 traveling to meet Dr. Daniels; b) .5 hours on January 23, 2009 traveling to hearing; c) .5 hours on January 23, 2009 traveling from hearing; d) 1.0 hours on February 13, 2009 traveling to hearing; e) 1.0 hours on February 13, 2009 traveling from hearing; f) 1.0 hours on February 25, 2009 traveling to hearing; g) 1.0 hours on February 25, 2009 traveling from hearing; h) 1.0 hours on March 24, 2009 traveling to hearing; i) 1.0 hours on March 24, 2009 traveling from hearing. (Pl. 56.1 Resp. ¶ 45.)

### F. Telephone Calls and Meetings

Pergament and Mulae each billed for the same telephone calls and meetings: a) .3 hours each on December 2, 2008 for status call with the hearing officer and the Board's attorneys; b) 1.0 hours on January 8, 2009 for a pre-hearing conference with the hearing officer; and c) .5 hours for a telephone conference with the plaintiffs. (Pl. 56.1 Resp. ¶ 46.)

### G.    Mediation Efforts

Plaintiffs' counsel billed 1.5 hours for a post-mediation meeting with the Plaintiffs on July 30, 2008 and .1 hours for emailing the hearings officer to advise him that mediation had failed.  (Pl. 56.1 Resp. ¶ 24; Def. 56.1 Exhibit C, pp. 2-3; Pl. 56.1 Resp. Exhibit A, ¶ 4.)

## IV.    Supplemental Fee Petition

In August 2009, after submitting the original July 21, 2009 fee petition, Plaintiffs retained attorney Mauk & O'Connor LLP ("O'Connor") to represent them regarding enforcement of their claim for attorneys fees.  (Def. 56.1 Resp. ¶ 24.)   On September 8, 2009, Plaintiffs, through O'Connor, submitted a supplemental fee petition for $2,220.00 for additional work performed in connection with ensuring compliance with the hearing officer's Opinion and Order, bringing the total amount of attorneys' fees and costs to $103,471.77.  (Pl. 56.1 Resp. ¶ 47; Def. 56.1 Resp. ¶ 25.) Included in O'Connor's September 8, 2009 letter was an itemized list of attorneys' fees and costs allegedly incurred by Plaintiffs leading up to and following the due process hearing.  (Pl. 56.1 Resp. ¶ 48.)

On September 11, 2009, the Board's counsel sent a letter in response to Plaintiffs' July 21, 2009 fee petition raising numerous objections to Plaintiffs' fee petition.  (Pl. 56.1 Resp. ¶ 49; Def. 56.1 Resp. ¶ 26.)  Plaintiffs' submitted a corrected fee petition on October 19, 2009 that made marginal reductions in response to the Board's objections.  (Pl. 56.1 Resp. ¶ 50; Def. 56.1 Resp. ¶ 27.)  The corrected fee petition reduced the original total by $8,298.75, leaving a total fee claim of $95,173.02.  (Pl. 56.1 Resp. ¶ 50; Def. 56.1 Resp. ¶ 27.)

V.      **Prevailing Rates**

The range of hourly rates in the Chicago metropolitan area for attorneys representing parents in special education matters is as follows: $330 an hour for attorneys with 20 or more years of experience; $295-330 an hour for attorneys with 11 to 19 years of experience; $270-295 an hour for attorneys with 6 to 10 years of experience; $240-$270 an hour for attorneys with 3 to 5 years of experience; $ 185 an hour for attorneys with 1 to 2 years of experience; and $85-115 an hour for law clerks and paralegals.  (Def. 56.1 Resp. ¶ 29.)  Plaintiffs' counsel Pergament has been licensed to practice law since 1998 and has extensive litigation experience.  (Def. 56.1 Resp. ¶ 30.)  The hourly rate for Pergament's services is $300.  (Def. 56.1 Resp. ¶ 30.)  Plaintiffs' counsel Mulae has been licensed to practice law since 1985 and her hourly rate is also $300.  (Def. 56.1 Resp. ¶ 30.)  Finally, the hourly rate for Mulae's and Pergament's law clerks is $75.  (Def. 56.1 Resp. ¶ 30.)

## STANDARD OF REVIEW

On cross-motions for summary judgment, each movant must satisfy the requirements of Federal Rule of Civil Procedure 56.  *See Cont'l Cos. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).  Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion.  *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); see *also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v.*

*Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## DISCUSSION

### I. Motion to Supplement the Record

As an initial matter, on August 2, 2010 Plaintiffs filed a Motion to Supplement the Record with this Court seeking to bring to the Court's attention two opinions involving attorney fee claims under the IDEA recently filed in the Northern District of Illinois: *M. v. Bd. of Educ. of the City of Chi.*, No. 10 C 2110, 2010 WL 2698285, at *4 (N.D. Ill. Jul. 7, 2010) (St. Eve, J.) and *Stephanie J. v. Board*, No. 10-1359, slip op. at 9-10 (N.D. Ill. July 30, 2010) (Conlon, J.). Plaintiffs have attached those opinions to their Motion to Supplement the Record as exhibits. (*See* R. 28, Ex. A, B.) Specifically, Plaintiffs emphasize that in both cases the court awarded prejudgment interest to the Plaintiffs' counsel on their attorneys' fee awards, and the award of prejudgment interest is a contested issue in this case. Because these decisions were only recently rendered and the Board has not filed any objection, the Court finds that there is no prejudice to the Board resulting from these supplements to the record. The Court would have addressed the relevant law even if the parties failed to do so. For these reasons, the Court grants Plaintiffs' Motion to Supplement the Record and will address this authority in analyzing the parties' Cross-Motions for Summary Judgment.

## II.     Cross-Motions for Summary Judgment

After the corrected fee petition of October 19, 2009, Plaintiffs request $95,173.02 in attorneys' fees. The Board admits that $53,577.00 of this request is appropriate for the work related to Ryan M.'s due process hearing, but contests the remaining $41,596.02 based on eight specific objections to the petition. (*See* R. 15, p. 2.) The Board's Motion for Summary Judgment argues that Plaintiff's award should be reduced to $53,577.00, while Plaintiffs argue in their Motion for Summary Judgment that the entire fee petition of $95,173.02 is reasonable.

### A.     Prevailing Party

The Individuals with Disabilities Education Act ("IDEA") contains a fee-shifting provision whereby "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415 (i)(3)(B). "To determine whether the Parents are entitled to attorneys' fees," the Court first "ask[s] whether they prevailed," where "[t]he term 'prevailing party' under 20 U.S.C. § 1415(e)(4)(b) has the same meaning as the phrase does in 42 U.S.C. § 1988." *Bd. of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 382 (7th Cir. 2000); *see also Jodlowski v. Valley View Cmty. Unit Sch. Dist.*, 109 F.3d 1250, 1253 n. 2 (7th Cir. 1997) ("[C]ases dealing with 42 U.S.C. § 1988, which provides for attorney's fees for prevailing parties in civil rights cases . . . nevertheless guide our interpretation of the meaning of 'prevailing party' under the IDEA."). In order to qualify as a "prevailing party" for purposes of the IDEA, a party must obtain "'actual relief on the merits of a claim that 'materially alters the legal relationship between the parties . . . in a way that directly benefits [that party].'" *Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 707-08 (7th Cir. 2005) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12, 113 (1992)). Here, the Board does not contest that Plaintiffs are prevailing parties. (*See* R.

24, p. 2.) Indeed, the hearing officer's Decision and Order of May 23, 2009 provided Plaintiffs substantial relief. It significantly changed the relationship between Ryan M., his parents, and the Board by moving Ryan M. to a new school with full day, year round educational and therapeutic services that address his core deficits in the areas of behavior, communication, functional independence and childhood development; hence, Plaintiffs qualify as prevailing parties under the IDEA. *See Linda T.*, 417 F.3d at 707-08.

### B. Reasonableness of the Fee Award

After finding that a plaintiff qualifies as a prevailing party under the IDEA, the Court considers the reasonableness of a prevailing party's request for an award. *See Linda T.*, 417 F.3d at 708. In determining a fee's reasonableness, the degree of the plaintiff's success is the most significant factor for the Court's consideration. *See id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The Court begins with the lodestar figure, which represents "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (quoting *Hensley*, 461 U.S. at 433); *see also, e.g.*, *M. v. Bd. of Educ. of the City of Chi.*, No. 10 C 2110, 2010 WL 2698285, at *4 (N.D. Ill. Jul. 7, 2010) (St. Eve, J.) ("the lodestar figure is the starting point"). The Court may then adjust that figure based on the factors set forth in *Hensley*, such as the time and labor required, the novelty or difficulty of the case, the degree of success achieved, the experience and ability of the attorneys, the adequacy of the documentation of the hours, and whether appropriate billing judgment was used. *See Hensley*, 461 U.S. at 430; *see also Enoch*, 570 F.3d at 823. The party requesting the fee has the burden of proving its reasonableness, including the hourly rate and appropriate hours expended. *See Hensley*, 461 U.S. at 437, *see also e.g.*, *M.*, 2010 WL 2698285, at *4; *Benito M. v. Board of Educ. of City of Chicago,*

*Dist. 299*, 544 F. Supp. 2d 713, 720 (N.D. Ill. 2008). Finally, federal district courts have considerable discretion in granting an award of attorney's fees. *See Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir. 1983).

Here, the Board concedes that the $300 per hour rate billed by Plaintiff's attorneys, as well as the $75 per hour rate charged by the paralegals, are reasonable rates for Chicago legal professionals of similar experience. (*See* R. 24, p. 3.) Based on the affidavits submitted by Plaintiffs' attorneys setting forth that Pergament has been licensed for 12 years and Mulae has been licensed for over 20 years, as well as the agreed prevailing Chicago rates of $330 an hour for attorneys with 20 or more years of experience, $295-330 an hour for attorneys with 11 to 19 years of experience, and $85-115 for paralegals, the Court agrees that these hourly rates are reasonable. Multiplying the total number of hours set forth in Plaintiffs' fee petition by these hourly rates, and subtracting the amounts that Plaintiffs themselves deducted in the October 19, 2009 corrected fee petition, results in the lodestar figure of $95,173.02.

The Board outlines eight general objections to the hours billed by Plaintiff's counsel in their fee petition, arguing that the lodestar should be reduced based on these objections. Specifically, the Board asserts that Plaintiffs should not be able to recover fees relating to unsuccessful motions, mediation, or duplicate entries, and that certain charges for drafting and researching several documents, preparing witnesses, non-legal research, and travel were excessive and therefore unreasonable. The Board also contends that because the Plaintiffs did not achieve full relief, they should not be entitled to the full fee. Based on these objections, the Board asks that the Court reduce the Plaintiff's fee to $53,577.00. The Court considers each of these arguments in turn.

### 1.    Unsuccessful Motion for Reconsideration

The Board first objects to Plaintiffs' bill of 10.0 hours preparing an unsuccessful motion for reconsideration and reply brief following the hearing officer's denial of expert classroom observation by Lane.  It asserts that time related to an unsuccessful motion is not recoverable and asks the Court to reduce the lodestar amount accordingly.  A plaintiff may not recover fees for unsuccessful claims that were unrelated to those claims that were successful.  *See Hensley*, 461 U.S. at 435.  The Court in *Hensley* explained that if two claims could have been brought in separate cases, an attorney should not be able to recover for work relating to the losing issue simply because it was filed with other successful claims. *See id.*  For the purpose of recovery of attorneys' fees, a "claim" is interpreted as a distinct request for relief based on different facts or different legal theories.  *See id.* at 434-35; *see also Mary Beth G.*, 723 F.2d at 1279.

Here, Plaintiffs' motion for reconsideration was far from a distinct "claim" as described in *Hensley*–instead, it was an intermediate, procedural request aimed at gaining evidence to achieve the ultimate goal of amending Ryan M.'s IEP.  *See Hensley*, 461 U.S. at 435 (courts should look to whether the work can be "deemed to have been expended in pursuit of the ultimate result achieved").  The motion is, therefore, more analogous to a non-dispositive discovery or pretrial motion than a separate, unrelated claim based on a different legal theory.  *See id.* (explaining that in many cases, "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," and this type of lawsuit "cannot be viewed as a series of discrete claims").  The time related to briefing of the motion for reconsideration is therefore reasonable and recoverable by Plaintiffs' counsel.

## 2. Drafting, Researching, and Reviewing Documents

The Board next requests the Court to reduce Plaintiffs' fee award based on excessive time billed for drafting, researching, and reviewing various documents. Specifically, the Board contends that 14.0 hours drafting a Due Process Complaint; 6.5 hours drafting a response to the Board's notice of insufficiency; 2.3 hours drafting a motion for a hearing date; 0.50 hours emailing clients and experts; 3.0 hours drafting a dissent to the IEP; 3.0 hours drafting stipulations of fact; 0.50 hours drafting a letter to the Board's counsel; 10.5 hours of attorney time and 11.5 hours of non-attorney time preparing a trial binder; 4.0 hours writing an opening statement; and 66.4 hours preparing a post-hearing brief are all excessive charges and should be reduced by fifty percent. The Board's objections amount to a total of $17,036.25 in requested reductions.

Using its discretion, the Court may reduce an attorneys' fee award when the hours billed are excessive in light of the attorneys' experience and the work produced. *See, e.g.*, *M.*, No. 10 C 2110, 2010 WL 2698285 at *5 (reducing the recoverable hours for work on a due process complaint from 13.5 to 8.5 total hours); *Benito*, 544 F. Supp. 2d at 720 (reducing time for record completion by one hour). Although "[a]n attorney's hours are subject to the scrutiny of the court and unreasonable hours should not be compensated," however, the court will not "eyeball the fee request and cut it down by an arbitrary percentage because it seem[s] excessive." *People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996) (internal citation omitted). Instead, the party opposing the fee must make some showing as to why the time billed should be reduced by a certain amount. *See, e.g.*, *M.*, 2010 WL 2698285, at *5 (five hour reduction was taken when the defendant Board submitted information from the Illinois Administrative Code outlining the requirements for a due process complaint and providing evidence of the average time spent drafting

similar complaints); *Jessica P. v. Bd. of Educ. of City of Chicago Dist. 299*, 06 C 0002, 2006 WL 1005356 at *3 (N.D. Ill. Apr. 13, 2006) (Shadur, J.) (denying Board's request for reductions when the Board provided no supporting evidence and the plaintiffs provided adequate explanation for the time involved).

Plaintiffs argue that the time billed on each of these documents was reasonable, in many cases directing the Court to the actual documents in question. Plaintiffs also claim, and the undisputed facts show, that this case "involved fact intensive, complex matters touching on child development problems including language, behavior, psychology and autism," and that these complex issues justified the time expended on the documents to which the Board objects. (*See* R. 23, pp. 4-7.) The Board, in response, has failed to present any legal support for its proposed reductions, relying only on conclusory assertions that the time billed is excessive and should be reduced by fifty percent based on the general level of experience of Plaintiffs' counsel.

After careful review of the documents in question, the Court determines that the hours requested by Plaintiffs' counsel are reasonable. *See Hensley*, 461 U.S. at 437. For example, the Due Process Complaint consists of a 12 page document making detailed factual allegations. (*See* Pl. 56.1 Resp., Ex. C.) Unlike in *M.*, where the defendants submitted evidence from the Illinois Administrative Code and other complaints to support their assertions that the time billed for drafting the Due Process Complaint was unreasonable, 2010 WL 2698285, at *5, the Board's request to reduce the time billed on the Due Process Complaint would require the Court to "eyeball the fee request and cut it down by an arbitrary percentage." *See People Who Care*, 90 F.3d at 1314. Likewise, Plaintiffs' motion requesting scheduling of a hearing date is a 7 page document outlining the procedural history of the complaint and Plaintiffs' Response to the Notice of Insufficiency is a

6 page document defending against the District's allegations of insufficiency of notice. (*See* Pl. 56.1 Resp., Ex. D, L.) The 2.3 hours and 6.5 hours respectively billed for the preparation and drafting of these documents is reasonable given their length, detail, and import to the litigation as a whole. Similarly, the 3.0 hours billed drafting a 4 page single spaced letter dissenting to the IEP, 3.0 hours billed drafting 4 pages of stipulations of fact, and 4.0 hours billed preparing a 7 page opening statement are reasonable considering the length of these documents and complexity of the issues in this case as shown in the undisputed facts. (*See* Pl. 56.1 Resp., Ex. F, H, I.) The 10.5 hours of attorney time and 11.5 hours of non-attorney time preparing the hearing book is also justified in light of the 509 page book that was produced and the 4 to 5 day duration of the due process hearing. *See, e.g.*, *Benito M.*, 544 F. Supp. 2d at 720 ("Time billed for this purpose is not excessive considering that the administrative hearing lasted seven days and involved a number of witnesses.") Finally, the 66.4 hours spent preparing a post-hearing brief is justifiable in light of the 45 page detailed memorandum of law that Plaintiffs' attorneys submitted. (*See* Pl. 56.1 Resp., Ex. J.) Because Plaintiffs have sufficiently justified the time spent on these and all other documents that the Board contests, and the Board has provided nothing but conclusory assertions in its objections, the Court awards the full fee amount relating to the preparation and drafting of these documents.

### 3. Preparing Witnesses and Direct Examinations

The Board claims that the Plaintiffs' time spent preparing witnesses is excessive and should be reduced by fifty percent. Specifically, the Board objects to 8.0 hours working with Dr. Daniels; 15.0 hours preparing and writing the direct examination for Lane; 7.0 hours working with Cutler; 21.0 hours preparing the Plaintiffs' direct examination; and 12.0 hours preparing the direct examinations of other Board witnesses such as Chicago Public Schools case managers and

administrators. Plaintiffs assert that this time was reasonable based on the complexity of Ryan M.'s case, education history, medical diagnoses, and behavioral symptoms.

Just as with objections for excessive drafting time, the Court may reduce an award of attorneys' fees for any time that it believes is excessive in light of the work performed, but will not arbitrarily make reductions to the billed amounts. *See People Who Care*, 90 F.3d at 1314. In its objections, the Board again provides conclusory statements suggesting that Plaintiffs' counsel's preparation time is excessive with no legal authority to support its position. Plaintiffs' counsel, however, points to specific facts about the complexity of the case in arguing that the time spent was reasonable, such as the emotional state of Geysy M. during her preparation, as well as the intensive nature of the hearing that spanned several days throughout a three month period. Given the extensive medical and educational history reflected in the undisputed facts, it is also reasonable that Plaintiffs' counsel expended several hours working with each of the witnesses from CPS. Moreover, given the seriousness of Ryan M.'s behavior and other problems alleged with his IEP, it also appears reasonable that Plaintiffs counsel would have spent a 8 hours writing and practicing the direct examination for Dr. Daniels, as well as 15 hours for Lane and 7 hours for Cutler.[2] After reviewing the hours asserted for the various witnesses, the Court concludes that the witness preparation time is reasonable and recoverable.

### 4. Non-legal Research

With respect to billing for non-legal research, the Board objects to 3.0 hours of billed attorney time related to researching preschool programs, asserting that this time is unreasonable because it should have been performed by a paralegal at the $75 per hour rate rather than the $300

---

[2] The Court notes, however, that it addresses the Board's objection to the 4.0 duplicate hours billed for Lane's preparation in Section VII *supra.*

per hour attorney rate. The Board requests a reduction of $675 from the lodestar amount to reflect the appropriate fee for this task. Plaintiffs contend that this attorney time is reasonable and therefore should be reflected in the lodestar amount because it was more cost efficient for the attorney to perform the research herself rather than train a legal assistant to perform the task.

When non-legal work has been billed at an attorney's hourly rate, the Court may reduce the fee to reflect the proper hourly rate of a legal assistant who could have performed the work. *See, e.g.*, *M.*, 2010 WL 2698285, at * 7. Here, the task of researching preschools is clearly non-legal in nature, and while it would require background knowledge of the requirements for a preschool program for Ryan M., Plaintiffs have asserted only that the research involved viewing numerous websites and that training a legal assistant would have taken more time than the research itself. Plaintiffs have provided no information about the complexity of the considerations involved or any details about the time it would have required to train a legal assistant. *See Dupuy v. McEwen*, 648 F.Supp.2d 1007, 1016 (N.D. Ill. 2009) (movant has "the burden of justifying the fees requested") (citation omitted). Therefore, Plaintiffs have failed to meet their burden of justifying the reasonableness of this time billed at an attorney's rate, and the Court reduces the lodestar amount by $675 to reflect the appropriate $75 per hour paralegal rate for the 3.0 hours of research.

### 5. Travel Time

The Board next argues that the 1.0 hour billed for travel time to and from Otis Elementary on February 13, 2009, February 25, 2009, and March 24, 2009 is excessive and should be reduced by fifty percent to correspond with the 0.5 hours of travel time billed for the same trip on January 23, 2009. The Board also contends that the 2.0 hours billed on January 14, 2009 for counsel to meet with Dr. Daniels was excessive and should be reduced. Plaintiffs make the unsubstantiated assertion

that the one hour travel times were affected by severe weather, and that the two hour travel on January 14 was the result of "severe inclement weather."[3]  Plaintiffs have not put forth any evidence to support these driving times, however, so as to meet their burden of establishing reasonableness. *See Hensley*, 461 U.S. at 437. Plaintiffs could have submitted various kinds of information supporting their assertion that the times of the trips were reasonable, such as weather reports from the days in question, the distance and route of the trip, or affidavits regarding the average and maximum travel times of the route, but failed to do so.  Without evidence to demonstrate the reasonableness of the asserted travel times, the Court reduces Plaintiffs' fees to 0.5 hours (the amount billed on January 23, 2009) for each trip to and from Otis Elementary on February 13, 2009, February 25, 2009, and March 24, 2009, and 1.0 hours to meet with Dr. Daniels on January 14, 2009. Thus, the Court reduces the total amount of billed travel time by 4.0 hours multiplied by the $300 hourly attorney billing rate, for a $1,200 reduction in the lodestar amount.

### 6.    Time Related to Mediation

Turning to the time billed related to mediation, the Board objects to 1.6 hours of time for which it believes the fees are unrecoverable.  Plaintiffs' counsel billed 1.5 hours for a post-mediation meeting with clients on July 30, 2008 regarding the status of the litigation, as well as 0.10 hours to draft an email to the hearing officer to notify him that the mediation had failed and that the hearing must proceed. [4]  The Board asserts that because the time was related to mediation, it may not be

---

[3]  Although Plaintiffs state in their response to the Board's Statement of Material Facts # 41 that inclement weather increased travel times on these days, Plaintiffs fail to properly include these facts in a statement of additional facts as they must under Local Rule 56.1 in order to give the Board an opportunity to respond and allow the Court to determine if these facts are undisputed.  *See* LR 56.1(b)(3)(C) (explaining that the opposing party's response must contain a *separate* statement "of any additional facts that require the denial of summary judgment").  Thus, as explained in footnote 1 *infra*, the Court disregards Plaintiffs' additional factual assertions about the weather on the dates in question.

[4] The Board also notes in its Motion for Summary Judgment an objection to 0.10 hours for drafting an email requesting mediation.  Because this email and the corresponding fee are not included in either party's statement of facts, the Court does not address the objection.

considered in an award of attorneys' fees.

Under the IDEA, fees relating to resolution meetings or mediation are specifically excluded from attorneys' fees that may be awarded.  *See* 20 U.S.C. § 1415(i)(3)(D)(iii) (preliminary resolution meetings shall not be considered meetings, administrative hearings or judicial action for which attorneys' fees may be recovered).  Plaintiffs contend that the 1.5 hours counsel billed for the post-mediation client meeting was not related to mediation, but instead was to conference with Plaintiffs regarding the next steps in the proceedings.  Additionally, Plaintiffs argue that the email to the hearing officer simply advised the officer that the hearing must proceed because mediation had failed.  A review of the undisputed facts makes clear that both the meeting and email were procedural steps that were necessary to continue with litigation.  Just because the events were the result of mediation does not mean that they were related to mediation.  Indeed, if all events that occurred because mediation failed qualified as proceedings related to mediation, the entirety of the litigation post-mediation could be considered as such. Because there is no evidence in the record to suggest that the meeting and email at issue constituted part of a preliminary resolution meeting, *see*  20 U.S.C. § 1415(i)(3)(D)(iii), the Court finds these hours to be recoverable under the IDEA.

### 7.    Duplicative Entries

The Board next objects to 4.9 hours of work that it claims is duplicative, unnecessary, and therefore unrecoverable.  It asserts that it was improper for both attorneys to bill for a 0.3 hour status call, a 1.0 hour pre-hearing conference, a 0.5 hour telephone conference with Plaintiffs, and 4.0 hours preparing potential witness Mara Lane.  From an award of attorneys' fees, the Court may deduct time that it believes is unnecessary, duplicative, or redundant.  *See, e.g.*, *Benito*, 544 F. Supp. 2d at 720

(making a deduction where multiple attorneys completed record requests and the descriptions of the hours billed were vague and did not describe the differences in work performed).

First, with respect to the 4.0 hours of witness preparation for Lane billed by both counsel, Plaintiffs have put forth no evidence to show why both of them were required to participate in Lane's preparation but not in the preparation of any of the other witnesses. Although they contend that her preparation "cut across areas of respective responsibility," they do not substantiate this assertion or explain why and how Lane's substantive testimony differed from that of the other witnesses. (*See* R. 23, p. 7.) Similarly, Plaintiffs offer no rationale as to why both attorneys needed to participate in the 0.5 hour telephone conference with Plaintiffs or the 0.3 hour status call other than the fact that "both parties participated in most telephone conferences." (*See* R. 23, p. 9.) Because Plaintiffs have not met their burden of showing reasonableness for these billings, *Hensley*, 461 U.S. at 437, the Court deducts these hours as redundant.

With respect to the 1.0 hour pre-hearing conference, on the other hand, Plaintiffs contend that it was "of sufficient importance to engage both co-counsel." (R. 23, p. 9.) Because it seems appropriate for both attorneys who will be involved in conducting the hearing to be present at a pre-hearing conference with the hearings officer, Plaintiffs have met their burden of establishing that this time billed is reasonable. Thus, the Court deducts a total of $1440 (4.8 hours multiplied by the $300 billing rate) from the lodestar amount for duplicative entries.

### 8. Degree of Success

As an overall matter, the Board contends that because Plaintiffs did not receive all of the relief requested in the due process hearing, the Court's award of attorneys' fees should be reduced by fifteen percent to reflect Plaintiffs' level of success. In particular, the Board points to the fact that

Plaintiffs requested individual, one-on-one speech, language, and occupational therapy and direct social work, but that this was not specifically ordered by the hearing officer. The Board requests that the total fee amount be reduced by fifteen percent to reflect Plaintiffs' failure to achieve relief on one out of the five total issues decided by the hearing officer.

After evaluating the individual components of the lodestar amount, the Court considers the overall reasonableness of the requested fee, analyzing the "relationship between the extent of success and the amount of the fee award." *See Farrar*, 506 U.S. at 115-16 (citing *Hensley*, 461 U.S. at 438). If "a plaintiff has achieved only partial or limited success, [the reasonable lodestar amount] may be an excessive amount. This will be true even where a plaintiff's claims were interrelated, non-frivolous, and raised in good faith." *Hensley*, 461 U.S. at 436. The Court may then reduce the overall award amount to reflect the Plaintiffs' degree of success. *See id.*; *see also, e.g.*, *John M. v. Bd. of Educ. of City of Chicago, Dist. 299*, 612 F. Supp. 2d 981, 998-99 (N.D. Ill. 2009) (Denlow, M.J.) (accepting plaintiffs' proposed reduction of fifteen percent as an appropriate and sufficient reduction to reflect the degree of success); *Benito*, 544 F. Supp. 2d at 721 (reducing fee award by fifteen percent); *Koswenda v. Flossmoor Sch. Dist. No. 161*, 227 F. Supp. 2d 979, 996-97 (N.D. Ill. 2002) (Denlow, M.J.) (reducing the fee by more than fifty percent "[i]n light of the comparison of the case presented by Plaintiffs to the recovery received, the limited public purpose of the litigation, and minor importance of the legal issues on which the Plaintiffs prevailed"). This consideration is qualitative in nature, and the Court's award should not reflect a mindless application of mathematics. *See John M.*, 612 F. Supp. 2d at 999. However, where a party has achieved excellent results, the attorney should recover a fully compensatory fee and should not be penalized "simply because the plaintiff failed to prevail on each contention raised." *See Hensley*, 461 U.S. at 435.

Here, the Plaintiffs contend that they have achieved full relief and that the request that Ryan M. be provided with "individual, one-on-one speech/language occupational therapy and direction social work," while not specifically ordered, is included within the hearing officer's order that Ryan M. be placed in an ISBE-approved private day school where Ryan M. will receive therapeutic treatment. However, Plaintiffs' have provided no information about the therapy Ryan M. has received at his new private day school or any other evidence to support the assertion that the request for individual, one-on-one speech occupational therapy was achieved. This request for one-on-one therapy was a unique component of the Plaintiffs' requested relief leading up to and through the due process hearing, and was not an "alternative legal ground" that the court "reject[ed] or fail[ed] to reach" as described in *Hensley*, 461 U.S. at 435. Without more, and given the undisputed facts regarding what was included in the hearing officer's order, the Court cannot assume that the Plaintiffs obtained full relief. Based on the discrepancy between the relief requested by Plaintiffs and the hearing officer's order of May 23, 2009, the Court determines that Plaintiffs did not obtain full relief and that attorneys' fees should be adjusted accordingly to reflect this limit in their success.

The Board requests a fifteen percent reduction to the total lodestar amount to reflect the fact that Plaintiffs were not completely successful. Fifteen percent is a common reduction when a plaintiff has achieved substantial, but not complete relief. *See e.g.*, *John M.*, 612 F. Supp. 2d at 998-99 (explaining that "[w]hile a valuation may be difficult, some type of valuation is necessary" and finding "Plaintiffs' proposed reduction of 15 percent . . . reasonable" in "light of the issues on which Plaintiffs did not prevail, as well as the difficulty in segregating the time spend on those issues"); *Benito*, 544 F. Supp. 2d at 721 ("Plaintiffs prevailed on their most significant claims, namely, placement at the Hyde Park Day School and compensatory speech services," but because they "did

not *completely* succeed on their claims," the court reduced the overall request by fifteen percent "to account for the degree of success [the] client obtained"). Therefore, the Court reduces the lodestar amount of $93,298.02 (including the deductions for travel time, non-legal research, and duplicative entries described above) by fifteen percent, bringing the total award of attorneys' fees to $79,303.32.

### C.      Prejudgment Interest

Finally, Plaintiffs seek prejudgment interest on their attorney's fee award. "Prejudgment interest is presumptively available to victims of federal law violations." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557, 572 (7th Cir. 2003); *see also M.*, 2010 WL 2698285, at *8 (an award of prejudgment interest is appropriate in IDEA cases subject to the court's discretion). The purpose of prejudgment interest is to ensure that an award is fully compensatory. *See City of Milwaukee v. Cement Div. Nat'l Gypsum Co.*, 515 U.S. 189, 195 (1995) ("The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss.").

The Board argues that prejudgment interest is not appropriate in this case because it made a reasonable effort to settle plaintiffs' attorneys' fees request and because there is no evidence of bad faith on the part of the Board. "Good faith" does not, however, "mitigate[] a losing party's obligation to pay the appropriate measure of prejudgment interest." *See First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999). Because the purpose of prejudgment interest is to compensate for the time value of money, not to punish a particular party, the Board's good conduct cannot excuse its obligation to pay prejudgment interest. *See M.*, 2010 WL 2698285 at *8 (citing *First Nat'l Bank of Chicago*, 172 F.3d at 480-81). In its discretion, the Court finds that prejudgment interest is appropriate here in order to fully compensate Plaintiffs' counsel for the delay in payment of their fees. *See id.* (awarding prejudgment interest in an IDEA attorneys' fees case

under an identical rationale); *see also Stephanie J. v. Board*, No. 10-1359, slip op. at 9-10 (N.D. Ill. July 30, 2010) (Conlon, J.) (finding prejudgment interest appropriate under the IDEA "to correct attorney's fee awards for the time value of money"). Because the IDEA provides no statutory interest rate, the Court uses the average prime rate for the time period to award prejudgment interest. *See First Nat'l Bank of Chicago*, 172 F.3d at 480 ("Our practice has been to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in 'refined rate-setting' directed at determining a more accurate market rate for interest.").[5]

 The Board also contends that if prejudgment interest is awarded, it should only accrue from October 26, 2009, the date that Plaintiffs filed their federal Complaint in this case. Because the Board provides no legal authority in support of this position and "prejudgment interest typically accrues from the date of loss or the date on which the claim accrued" in order to "put a party in the position that it would have been in had it been paid immediately," *see American Nat. Fire Ins. Co.v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003), the Court finds that there is no basis for setting the filing of this Complaint as the date for accrual. Instead, prejudgment interest will accrue from the date of the hearing decision on May 20, 2009.

---

[5] From January 2009 to the present, the prevailing prime rate has been 3.25, which is therefore the rate that applies here. *See* http://www.federalreserve.gov/releases/h15/update/.

## CONCLUSION AND ORDER

For the reasons stated above, the Court grants Plaintiffs' Motion to Supplement the Record. It also grants in part and denies in part Plaintiffs' Motion for Summary Judgment, and grants in part and denies in part the Board's Cross-Motion for Summary Judgment. In sum, the Court reduces Plaintiffs' fee petition of $95,173.02 by $675 for non-legal research, $1,200 for travel time, $1,440 for duplicative entries, and then by fifteen percent to account for Plaintiffs' degree of success. That brings the total attorneys' fee award to $78,079.32, plus prejudgment interest.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 9, 2010